Argued and submitted June 25, affirmed July 18, reconsideration denied September 19, petition for review denied October 23, 1990 (310 Or 475)

## MUTUAL OF ENUMCLAW,
*Respondent,*

*v.*

## Wilbur MERRILL,
*Defendant,*

*and*

## Joseph SCHUTZ,
Guardian ad litem of Amy Marie Merrill,
*Appellant.*

(88C-10414; CA A62402)

794 P2d 818

Linda C. Love, Lake Oswego, argued the cause for appellant. With her on the briefs was Craine & Love, Lake Oswego.

Cathy E. Smith, Portland, argued the cause for respondent. With her on the brief was Acker, Underwood, Norwood & Hiefield, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff liability insurer brought this declaratory judgment action against its insured, Wilbur Merrill (Merrill), and Amy Merrill (defendant), his minor granddaughter. Plaintiff contends that it has no duty to defend or indemnify Merrill in defendant's underlying action against him, in which she alleges that he sexually molested her and thereby caused physical and emotional injuries. Plaintiff argues that Merrill's conduct falls outside its personal liability coverage and comes within the policy exclusion for "bodily injury * * * which is either expected or intended from the standpoint of the insured." Defendant makes the opposite contentions and argues that, because Merrill did not intend to harm her, he is covered.

The trial court found:

"Defendant Wilbur Merrill acted intentionally in performing various acts of sexual molestation of [defendant] over an extended period of time.

"Wilbur Merrill did not subjectively intend or expect by these acts to cause emotional distress or physical injury to [defendant]."

It then concluded, *inter alia:*

"Intentional sexual abuse is the type of conduct from which an intent to cause harm must necessarily be inferred as a matter of law."

Accordingly, the trial court entered a judgment declaring that plaintiff had no duty to defend or indemnify. Defendant appeals, and we affirm.

The court said in *Nielsen v. St. Paul Companies,* 283 Or 277, 583 P2d 545 (1978):

"It is not sufficient that the insured's intentional, albeit unlawful, acts have resulted in unintended harm; the acts must have been committed for the purpose of inflicting the injury and harm before either a policy provision excluding intentional harm applies or the public policy against insurability attaches. *Snyder v. Nelson/Leatherby Ins.,* 278 Or 409, 413-14, 564 P2d 681 (1977); *City of Burns v. Northwestern Mutual,* 248 Or 364, 369, 434 P2d 465 (1967).

"* * * There are some intentional acts the nature of which

is such that it must necessarily be concluded that there was an intention to injure." 283 Or at 281.[1]

We applied the *Nielsen dictum* in *Cunningham & Walsh, Inc. v. Atlantic Mutual Ins.,* 88 Or App 251, 744 P2d 1317 (1987), *rev den* 305 Or 102 (1988), and rejected the insured's argument

"that if *the particular kind of harm* for which damages are sought is not alleged to have been intended, the insurer is not excused from defending the claim, even if the complaint alleges intentional conduct, the necessary consequence of which is intended harm of some kind." 88 Or App at 254. (Emphasis in original.)

Instead, we interpreted *Nielsen* to mean:

"The court made no distinction between types of harm alleged and types not alleged. It stated only that, under the complaint before it, there was no allegation from which it *had* to be concluded that the insured intended any harm. If, as the court reasoned, the only allegation is that the insured acted intentionally *(i.e.,* volitionally), that is not sufficient to bring the alleged conduct beyond the coverage of the policy or to bring the public policy into play; it must also be alleged or necessarily inferred that some harm was intended by the intentional act. If it is alleged or necessarily inferred that some harm was intended, the insured's conduct would not be an accident or an 'occurrence' covered by the policy." 88 Or App at 255. (Emphasis in original.)

We then concluded that the insured was not entitled to indemnity for defense costs and the settlement in an action for deceit, because "deceit, by its nature, is an act from which an intention to cause harm must necessarily be inferred[.] * * * [W]hen deceit is intended, it is of no consequence that the specific harm for which relief is sought is not alleged to have been intended." 88 Or App at 255; *see also Falkenstein's Meat Co. v. Maryland Casualty Co.,* 91 Or App 276, 754 P2d 621 (1988).

Defendant asserts that the "conduct of the insured in a sexual abuse case is not intentional as a matter of law, but must be proven in each case. * * * In this case, the insured did not subjectively intend to harm the child." The first prong of

---

[1] For reasons that are not significant to our analysis, the court held that the insured's conduct in *Nielsen* did not give rise to an inference of an intention to injure.

defendant's argument is answered by the court's unchallenged finding that Merrill's acts of molestation were intentional. The second prong is essentially irrelevant. The fact that Merrill did not subjectively intend the specific injuries that defendant sustained—or any injuries—does not matter, because an injurious intent is necessarily inferred from this type of intentional misconduct. Defendant's contrary argument is little short of absurd. One of the reasons sexual abuse of a child is a tort—and a crime—is because of the great risk that the child will be physically or emotionally harmed. *See State v. Jalo,* 72 Or App 479, 696 P2d 14, *rev den* 299 Or 443 (1985); *Commentary, Proposed Oregon Criminal Code, Final Draft and Report* 108, § 106 (1970). It would be wholly anomalous for us to hold, as we did in *Cunningham,* that a harmful intent is inferable from intentional deceit, but to hold here that no such inference arises from the intentional sexual abuse of a child.

Defendant relies on *Safeco Ins. v. House,* 80 Or App 89, 721 P2d 862, *rev den* 302 Or 86 (1986), for the proposition, among others, that policy provisions similar to the ones here require a showing of subjective harmful intent in order for coverage to be defeated. The plaintiff's insured in *House* shot three people while he was intoxicated. The underlying issue was whether his intoxication "rendered him unable to act intentionally or purposefully at the time of the shootings." 80 Or App at 91. Although the question was not presented in *House,* it is clear that, if the shootings themselves were intentional, an intent to injure would have been inferred as a matter of law. Here, the underlying misconduct was intentional.

Affirmed.