Argued and submitted May 1, resubmitted In Banc September 9, affirmed
November 12, 1987, reconsideration denied January 8, petition for review denied
February 9, 1988 (305 Or 102)

CUNNINGHAM & WALSH, INC.,
*Appellant,*

*v.*

ATLANTIC MUTUAL INSURANCE COMPANY,
*Respondent.*

(8510-06368; CA A41102)

744 P2d 1317

Timothy J. Murphy, Portland, argued the cause for appellant. On the brief were Michael J. Morris, Portland, and Grebe, Gross, Peek, Osborne & Dagle, P.C., Portland.

Thomas M. Christ, Portland, argued the cause for

respondent. With him on the brief was Mitchell, Lang & Smith, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Rossman, Judges.

WARREN, J.

Van Hoomissen, J., dissenting.

## WARREN, J.

Cunningham & Walsh, Inc., (C & W) brought this action against its liability insurer, Atlantic Mutual Co. (Atlantic), to recover the cost of defending and settling an action brought by Kline. The trial court granted summary judgment for Atlantic, and C & W appeals. We agree with the trial court's determination that Atlantic had no duty to defend C & W and affirm.

Atlantic issued to C & W a comprehensive general liability policy, which provides, in part:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A.  Bodily injury or

"B.  Property damage

"to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if the allegations of the suit are groundless, false or fraudulent."

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

■■ In 1981, Kline sued C & W, alleging misrepresentation and deceit in connection with the sale of a beer distribution franchise. The complaint prayed for damages for "mental anguish and pain" allegedly caused by the misrepresentation. Atlantic refused to defend the claim on the grounds that the harm which was alleged was not "bodily injury" and that C & W's alleged conduct was not an "occurrence" within the meaning of the policy, because it was intentional, *i.e.,* not an accident. We need not reach the question whether the complaint alleged bodily injury, because we conclude that the conduct alleged necessarily includes the intentional infliction of harm and is not, therefore, an "occurrence" covered by the policy. Additionally, we conclude the conduct could not be insured, because to provide coverage for fraud would violate public policy.

C & W mistakenly relies on *Nielsen v. St. Paul Companies,* 283 Or 277, 583 P2d 545 (1978), to support its contention that Atlantic should be required to defend the claim. The complaint that the insured sought to have defended there alleged that the insured, without legal authority or permission, entered Mrs. Palin's vehicle and residence and removed and repossessed a grandfather clock and, in so doing, struck Mrs. Palin on her arms and rendered her nervous and upset. The insurer refused to defend the claim on the ground that the complaint was based on intentional conduct beyond the scope of the policy. In affirming the trial court's holding that the insurer had a duty to defend, the Supreme Court recognized that to provide insurance coverage for the protection of one who intentionally inflicts injury upon another is against public policy. Whether an insurer is relieved from defending an action on the ground that the conduct was intentional depends on the allegations of the complaint. The court stated:

"* * * It is not sufficient that the insured's intentional, albeit unlawful, acts have resulted in unintended harm; the acts must have been committed for the purpose of inflicting the injury and harm before either a policy provision excluding intentional harm applies or the public policy against insurability attaches. *Snyder v. Nelson/Leatherby Ins.,* 278 Or 409, 413-14, 564 P2d 681 (1977); *City of Burns v. Northwestern Mutual,* 248 Or 364, 369, 434 P2d 465 (1967).

"* * * There are no allegations in the count in question from which it must be concluded that the insured or anyone else at his direction intentionally inflicted physical injury or emotional harm upon Mrs. Palin. There are some intentional acts the nature of which is such that it must necessarily be concluded that there was an intention to injure. However, the facts alleged against the insured were not of this nature. * * *

"* * * There is nothing in the policy which limits coverage to negligent acts. It covers intentional acts as well, so long as such acts were not done *for the purpose* of injuring another. * * *" 283 Or at 281 (Emphasis in original.)

C & W would read that language to say that if *the particular kind of harm* for which damages are sought is not alleged to have been intended, the insurer is not excused from defending the claim, even if the complaint alleges intentional conduct, the necessary consequence of which is intended harm of some kind. In other words, if C & W intended to cheat Kline, but did not intend to cause him emotional distress, the

claim for emotional distress would be covered. That is not a correct reading. The court made no distinction between types of harm alleged and types not alleged. It stated only that, under the complaint before it, there was no allegation from which it *had* to be concluded that the insured intended any harm. If, as the court reasoned, the only allegation is that the insured acted intentionally (*i.e.,* volitionally), that is not sufficient to bring the alleged conduct beyond the coverage of the policy or to bring the public policy into play; it must also be alleged or necessarily inferred that some harm was intended by the intentional act. If it is alleged or necessarily inferred that some harm was intended, the insured's conduct would not be an accident or an "occurrence" covered by the policy. In *Nielsen,* the complaint could be read to mean that, although Nielsen had entered Mrs. Palin's automobile and home intentionally and in the course of doing so made physical contact with her, no harm to her was necessarily intended. Under those circumstances, there was a duty to defend.[1]

■   Here, the underlying complaint alleges that C & W intentionally deceived Kline with an intent to cause him to rely on the misrepresentation and to enter into a franchise agreement. Although no specific *type* of intentional harm is alleged, we conclude that deceit, by its nature, is an act from which an intention to cause harm must necessarily be inferred, *see Nielsen v. St. Paul Companies, supra,* 283 at 281, and that, when deceit is intended, it is of no consequence that the specific harm for which relief is sought is not alleged to have been intended. We hold that, when fraud or deceit is committed, its natural and intended consequence is to do harm and, whatever the harm might be, the conduct which brought it about is not an "occurrence" under the policy.

We may not read into an insurance contract that which we would regard as against public policy if it were expressly included in it. We would not enforce a provision of a policy which requires indemnity for mental distress caused by the policyholder's fraud or deceit. If it is against public policy to insure the intended conduct, it is against public policy to insure for the harm which it causes, whether the particular harm which is intended or not.

---

[1] In fact, the evidence in *Nielsen v. St. Paul Companies,* 283 Or 277, 583 P2d 545 (1978), was that the physical contact with Mrs. Palin was unintentional.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

I dissent because I disagree with the majority's conclusion that C & W is mistaken in relying on *Nielsen v. St. Paul Companies,* 283 Or 277, 583 P2d 545 (1978). In rejecting C & W's contentions, the majority reads the holding in *Nielsen* so narrowly that it comes close to extinguishing it.

In *Nielsen,* the underlying complaint had alleged that St. Paul's insured had intentionally and wrongfully entered the plaintiff's vehicle and residence in order to repossess a grandfather clock and in doing so had struck plaintiff on her arms. St. Paul contended that the complaint alleged intentional infliction of harm, which was not covered because the harm was not caused by an "occurrence."[1]

The court rejected St. Paul's argument, stating that to relieve an insurer from defense of an action,

"[i]t is not sufficient that the insured's *intentional, albeit unlawful,* acts have resulted in unintended harm; the acts must have been committed *for the purpose of inflicting the injury and harm* before [the] policy provision excluding intentional harm applies." *Nielsen v. St. Paul Companies, supra,* 283 Or at 281. (Emphasis supplied).

Looking to the complaint, the court observed:

"There are no allegations * * * from which it must be concluded that the insured * * * intentionally inflicted physical injury or emotional harm upon [the plaintiff]."

Therefore, the court concluded that St. Paul had a duty to defend.

However, the *Nielsen* court did note that an insurer may be relieved even where intent to injure was not alleged in the complaint, when that intent would arise by necessary implication. "There are some intentional acts the nature of which is such that it must necessarily be concluded that there was an intention to injure." *Nielsen v. St. Paul Companies, supra.* Deceit, the majority here states conclusorily, is such an act. 88 Or App at 255. I fail to see how the deceit alleged here

---

[1] The policy language regarding coverage construed in *Nielsen* is identical to the policy language concerned in this case. *See* 88 Or App at 253.

implies more than an intent to deceive plaintiff so that he would rely on the misrepresentations and enter the franchise agreement. The economic harm intended here is no different than the economic harm caused to plaintiff in *Nielsen* by the conversion of her clock.

The unspoken premise of the majority's argument is that deceit is a tort and that tort law would hold C & W liable for any intended or unintended harm caused by the tortfeasor. However, this is not a tort case. We are interpreting a contract which states that injury "expected [or] intended from the standpoint of the insured" is outside the policy's coverage.

There is no allegation in the underlying complaint that the alleged mental anguish and pain was caused intentionally. The tortious nature of deceit is not enough to create a necessary inference that mental anguish and pain were intended. In construing this contract, in the words of *Nielsen,* it is not "significant that the alleged acts of the insured were unlawful. Mere unlawfulness of the act does not raise any necessary implication that it was the actor's intent to injure." 283 Or at 281.

I would hold that the complaint alleges mental anguish and pain caused by an occurrence, that mental anguish and pain is bodily injury[2] and that Atlantic has a duty to defend.

Richardson, Warden, and Rossman, JJ., join in this dissent.

---

[2] *See e.g., Bloodworth v. Carroll,* 455 So 2d 1197, 1205 (La App 1984); *Pacific Mortg. & Ins. Group v. Wienecke,* 50 Md App 128, 436 A2d 493 (1981); *NPS Corp v. Insurance Co. of North America,* 213 NJ Super 547, 517 A2d 1211 (1986).