Argued and submitted March 29, affirmed September 7, reconsideration denied December 2, 1988, petition for review denied January 4, 1989 (307 Or 303)

OREGON INSURANCE GUARANTY ASSOCIATION,
*Respondent,*

*v.*

THOMPSON,
*Appellant.*

(85-2215; CA A44664)

760 P2d 890

Bert E. Joachims, Portland, argued the cause and filed the brief for appellant.

I. Franklin Hunsaker, Portland, argued the cause for respondent. With him on the brief were John A. Bennett, Christopher A. Rycewicz, and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

**JOSEPH, C. J.**

This is a declaratory judgment action in which defendant, the insured, appeals from a judgment holding that the insurer, plaintiff, had no duty under a general liability policy to defend an action or to pay a judgment against him. We affirm.

Plaintiff[1] issued defendant a policy which provides, in relevant part:

"I.    Coverage L - Personal Liability.

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage[.]

"* * * * *

"III.  Coverage N - Physical damage to property

"* * * * *

"This coverage does not apply to injury or destruction:

"(a)    * * * * *

"(b)    caused intentionally by an insured over twelve years old.

"* * * * *

"4.    Insured's Duties in the Event of Occurrence, Claim or Suit:

"(a)    In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the [Insurance Company] or any of its authorized agents as soon as practicable."

With one exception, the facts are undisputed. The underlying action arose from a long-running dispute between defendant and Scott about the use of a right-of-way across

---

[1] Oregon Insurance Guaranty Association was substituted as plaintiff after the Insurance Commissioner declared the carrier, Forest Industries Insurance Company, insolvent.

Scott's property. In June, 1977, Scott obtained an injunction prohibiting defendant from trespassing on his property. In May, 1979, Scott saw defendant working on a road and concluded that he was trespassing. Scott tried to stop him, and an altercation ensued. Defendant thereafter sued Scott for personal and property damages resulting from that incident.

In March, 1980, defendant was held in criminal contempt for violating the 1977 injunction in the course of the 1979 incident. Scott then counterclaimed for trespass,[2] including punitive damages, in defendant's damage action and attached to his pleading a copy of the judgment holding defendant in contempt.[3] In May, 1982, defendant tendered the defense of that counterclaim to plaintiff, which rejected it on the grounds that defendant's alleged actions were intentional, and thus outside the scope of the policy's coverage, and also that it was prejudiced by defendant's untimely notice.

Defendant's contempt conviction was set aside in October, 1983. In November of that year, Scott filed an amended counterclaim, which contained essentially the same allegations as his original counterclaim but excluded any reference to the contempt judgment. On July 19, 1984, defendant tendered defense of the amended counterclaim to plaintiff.

---

[2] Scott's original counterclaim for trespass alleged:

"VII

"On or about May 31, 1979, plaintiff Frank Thompson entered on property belonging to the [defendant] * * * with heavy equipment and did then and there spread gravel and rock about the [defendant's] field.

"VIII

"Said actions of Thompson were without the consent or permission of the Scotts, and were done to the defendant's damage in the amount of $5,000.00.

"IX

"The actions of the plaintiff, Frank Thompson, were knowing and intentional, and the same is heretofore finally determined by this court by that certain judgment attached hereto as Exhibit 'B', and in violation of societal interest, and defendants Scott are entitled to judgment for $60,000.00 punitive damages."

[3] In the March, 1980, contempt judgment, the court found:

"[Defendant] knew and was aware of [the injunction].

"* * * * *

"[Defendant] entered upon said premises of * * * Scott, with heavy equipment and spread rock and gravel thereon.

"* * * [P]laintiff knowingly and intentionally entered the premises in violation of the above mentioned [injunction] and without justification."

The letter accompanied a copy of the amended pleading but did not specifically point out that the contempt judgment had been set aside. The parties dispute whether plaintiff ever received the letter.

On August 30, 1984, a jury returned a verdict in favor of Scott on his trespass counterclaim, awarding $3,100 actual damages and $15,000 as punitive damages.[4] On October 30, 1984, defendant wrote plaintiff, demanding that it pay the adverse judgment, tendering defense of the appeal of that judgment and referring to plaintiff's purported receipt of the July 19, 1984, letter. The letter did not have with it a copy of the amended counterclaim pleading and did not mention the vacated contempt judgment. On November 9, 1984, plaintiff requested a copy of the July 19 letter and any further information that would clarify defendant's demands. Defendant did not respond. Plaintiff did not represent him on the appeal and ultimately brought this action.

The trial court, relying on the contempt judgment, held that plaintiff had no duty to defend or to provide coverage for the liability arising from defendant's intentional conduct. It also rejected all of defendant's affirmative defenses and found that plaintiff had never received the July 19 letter.

We first address plaintiff's duty to pay the judgment for Scott entered against defendant. Implicit in the jury's award of punitive damages in the underlying trespass action was that defendant wilfully and intentionally trespassed. Because the insurance policy expressly excludes coverage for intentional conduct, we hold that the trial court did not err in holding that plaintiff had no duty to pay the adverse judgment.

Plaintiff's duty to defend is a more difficult question. We must consider it separately for the original and the amended counterclaim. Defendant asserts that plaintiff had a duty to defend him on the original counterclaim for trespass. He relies on *Ferguson v. Birmingham Fire Ins.,* 254 Or 496, 507, 460 P2d 342 (1969), in which the court held that the insurer had to defend an action for wilfull trespass, despite an express exclusion of coverage for intentional acts, because the

---

[4] The parties stipulated that plaintiff did not have a duty under the insurance policy to pay the punitive damages awarded to Scott.

insured could have been held liable for negligent trespass without the complaint being amended. The court treated negligent trespass as a "lesser included offense" of intentional trespass. 254 Or at 507.

■■■ Although the duty to defend is generally determined by comparing the terms of the insurance policy with the allegations in the underlying complaint,[5] and an insurer has an obligation to defend if the injured claimant could recover under those allegations on any basis for which the insurer affords coverage, *Oakridge Comm. Ambulance v. U.S. Fidelity, supra,* n 5, 278 Or at 24. Those rules are applicable only "in the absence of any compelling evidence of no coverage." *Casey v. N.W. Security Ins. Co.,* 260 Or 485, 489, 491 P2d 208 (1971). If lack of coverage has uncontrovertibly been established in a separate judicial proceeding, the insurer has no obligation to defend. 260 Or at 490.

■ The original counterclaim was for intentional trespass, which would have included liability for negligent trespass. Without more, under *Ferguson,* there would have been a duty to defend. However, the counterclaim pleading also included the contempt judgment and the court's finding in that proceeding that defendant's conduct was intentional. When defendant first tendered the defense to plaintiff in May, 1982, the contempt judgment "uncontrovertibly established" that the trespass was intentional and, therefore, was outside the scope of the policy's coverage. Thus, plaintiff had no duty to defend against the counterclaim as originally pleaded, and it properly refused to do so.

---

[5] Plaintiff argues that the jury's implicit finding of intentional conduct in its award of punitive damages in the trespass action establishes that defendant's actions were not an "occurrence" within the meaning of the insurance policy, *see Cunningham & Walsh, Inc. v. Atlantic Mutual Ins.,* 88 Or App 251, 253, 744 P2d 1317 (1987), *rev den* 305 Or 102 (1988), which defines occurrence as

"an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Although an insurer has a duty to defend only if the claim is covered by the policy, the duty is derived from the allegations in the complaint, not by the eventual verdict. 13A Couch, *Cyclopedia of Insurance Law* 469, § 51:44 (1982). The insurer's knowledge of facts not alleged in the complaint is irrelevant. *Oakridge Comm. Ambulance v. U.S. Fidelity,* 278 Or 21, 24, 563 P2d 164 (1977). To allow an insurer to withhold a defense until the question of coverage is resolved by the verdict would render the duty to defend illusory. *See Casey v. N.W. Security Ins. Co.,* 260 Or 485, 489, 491 P2d 208 (1971).

■ When the contempt judgment was vacated and the counterclaim was amended to exclude reference to that judgment, there was no longer a conclusive determination of intentional conduct. On the basis of the allegations in the amended counterclaim, plaintiff would have had a duty to defend under *Ferguson v. Birmingham Fire Ins., supra,* unless it did not receive notice of the amended claim.

■■ An insurer must receive a copy of the pleading so that it may review the allegations to determine whether there is coverage. Notice of the claim is a condition precedent to the duty to defend. The trial court found that plaintiff did not receive the July letter, and that finding is supported by substantial evidence. Defendant's October, 1984, letter did not include the pleading, and he did not respond when plaintiff requested a copy of the July letter and additional information to clarify his demands. Without having knowledge that the counterclaim had been amended in a manner that could affect its contractual duty, plaintiff had no reason or basis on which to reconsider its initial decision not to defend.

■■ Defendant relies on *Halsey v. Fireman's Fund Ins. Co.,* 68 Or App 349, 354, 681 P2d 168, *rev den* 297 Or 601 (1984), for the proposition that, even if he failed to give plaintiff notice, it still had a duty to defend, because it failed to carry its burden of proving prejudice from the lack of notice. Defendant's reliance is misplaced. In *Halsey,* we addressed only the duty to pay and not the duty to defend. An insurer's duty to defend is independent of, and not limited by, its duty to pay. Without a pleading it has nothing on which to make that determination. When the duty to defend is at issue, the matter of prejudice from an insured's failure to give notice of the claim is irrelevant. Accordingly, we hold that plaintiff had no duty to defend, because defendant failed to satisfy the notice condition precedent.[6]

Affirmed.

---

[6] Defendant's other arguments are without merit.