Argued and submitted October 16, 1992, affirmed June 23, reconsideration denied November 10, 1993, petition for review pending 1994

Bill R. LEDFORD,
*Plaintiff,*

*v.*

Peter C. GUTOSKI
and Raymond A. Kuhl,
*Defendants,*

Raymond A. KUHL,
*Third-Party Plaintiff - Appellant,*

*v.*

NORTHWEST FARM BUREAU
INSURANCE COMPANY,
*Third-Party Defendant - Respondent.*

(16-90-07552; CA A73578)

855 P2d 196

P. Scott McCleery, Eugene, argued the cause for appellant. With him on the briefs was Doyle, Gartland, Nelson & McCleery, P.C., Eugene.

Larry Dawson, Portland, argued the cause for respondent. With him on the brief was Larry Dawson, P.C., Portland.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

ROSSMAN, P. J.

---

* Leeson, J., *vice* Buttler, J., retired.

## ROSSMAN, P. J.

This action for defense costs and indemnity is brought by third-party plaintiff Kuhl against his insurer, third-party defendant Northwest Farm Bureau Insurance Company (Northwest). Kuhl appeals from a partial summary judgment for Northwest, assigning error to the trial court's holding that Northwest had no duty either to defend him in the underlying action or to indemnify him for the settlement. We affirm.

Northwest issued Kuhl a Home Insurance Policy in which it promised to pay

"on behalf of the insured for damages from **bodily injury** or **property damage** caused by an **occurrence**, if the **insured** is legally obligated. * * *." (Bold face in original.)

The policy defines an "occurrence" as

"an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** *neither expected nor intended from the standpoint of the insured. * * *.*" (Bold face in original; emphasis supplied.)

In August, 1990, Ledford filed an action for malicious prosecution against defendants Gutoski and Kuhl. Ledford's amended complaint, filed in September, 1990, alleged, in pertinent part:

"6.

"Defendants acted maliciously and willfully in instituting the prosecution of [Ledford] in that they *intended to harass, annoy, harm and cause expense to [Ledford].*

"* * * * *

"9.

"Due to Defendant's aforesaid malicious conduct *in instituting the criminal prosecution for the purpose of injuring [Ledford,* he requests punitive damages.]" (Emphasis supplied.)

Kuhl tendered his defense of the claim to Northwest. Northwest refused to defend, reasoning that Ledford's complaint alleged intentional acts that fell outside the policy's personal liability coverage.

The parties to the original action reached a settlement agreement on the malicious prosecution claim, which was reduced to a judgment on August 6, 1991, *nunc pro tunc* July 18, 1991. Kuhl paid Ledford $3,500 under the terms of the agreement.

On October 2, 1991, Kuhl filed this third-party complaint, along with a motion for summary judgment, alleging that Northwest had breached its duty to defend him in the action against Ledford. Northwest filed a cross-motion for partial summary judgment, arguing that it was not obligated to defend Kuhl. The trial court denied Kuhl's motion for summary judgment and granted Northwest's motion on the ground that Ledford's complaint alleged conduct that was not covered under the policy. The court also determined that Northwest had no duty to pay Kuhl for the settlement.

██ We first address whether Northwest was required to defend Kuhl in the action against Ledford. An insurer's duty to defend is determined by comparing the terms of the insurance policy with the allegations of the complaint in the underlying action. *Oakridge Comm. Ambulance v. U.S. Fidelity*, 278 Or 21, 24, 563 P2d 164 (1977); *Falkenstein's Meat Co. v. Maryland Casualty Co.*, 91 Or App 276, 279, 754 P2d 621 (1988). If the complaint alleges facts which, if true, impose liability for conduct covered by the policy, then the insurer has a duty to defend the insured. *Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 505, 460 P2d 342 (1969); *Cooper v. Commonwealth Land Title Ins. Co.*, 73 Or App 539, 542, 699 P2d 1128, *rev den* 299 Or 583 (1985). Even when the complaint alleges facts that take the insured's conduct outside the policy's coverage, the insurer still has a duty to defend if the complaint, without amendment, may admit proof of conduct covered by the policy. *Ferguson v. Birmingham Fire Ins., supra*, 254 Or at 507; *Mutual of Enumclaw Ins. Co. v. Gass*, 100 Or App 424, 427, 786 P2d 749, *rev den* 310 Or 70 (1990); *Cooper v. Commonwealth Land Title Ins. Co., supra*, 73 Or App at 542. Kuhl contends that Northwest had a duty to defend him because Ledford's complaint may have admitted proof of conduct that is covered by the insurance policy.

■        To prevail on a claim for malicious prosecution, a plaintiff must prove:

1)   The defendant instituted a criminal proceeding against the plaintiff;

2)   The proceeding terminated in favor of the plaintiff;

3)   The defendant did not have probable cause to institute the proceeding; and

4)   The defendant acted with malice, *i.e.*, a primary purpose other than that of bringing the accused to justice.

*Rogers v. Hill*, 281 Or 491, 497, 576 P2d 328 (1978); *Fleet v. May Dept. Stores, Inc.*, 262 Or 592, 601, 500 P2d 1054 (1972); Prosser and Keeton, *Torts* 871, § 119 (5th ed 1984). Kuhl asserts that a claim for malicious prosecution can be maintained without proving that the defendant intended to harm the plaintiff. He points out that malice can be shown by the existence of a primary purpose other than that of bringing the accused to justice and argues that there are several "primary purposes" that qualify as "malicious" but that do not involve an intent to cause harm:

" 'Malice' is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to 'tie up the mouths' of witnesses in another action, or as an experiment to discover who might have committed the crime." Prosser and Keeton, *Torts* 883, § 119 (5th ed 1984).

Therefore, Kuhl reasons, Northwest had a duty to defend him because Ledford's complaint, without amendment, may have imposed liability on Kuhl without proof that he acted for the specific purpose of causing harm to Ledford.

In deciding whether an insurer has been relieved of its duty to defend based on a complaint which alleges conduct beyond the policy's coverage, the Supreme Court said, in *Nielsen v. St. Paul Companies*, 283 Or 277, 281, 583 P2d 545 (1978):

"It is not sufficient that the insured's intentional, albeit unlawful, acts have resulted in unintended harm; the acts must have been committed for the purpose of inflicting the

injury and harm before either a policy provision excluding coverage applies or the public policy against insurability attaches.

"There are some intentional acts the nature of which is such that it must necessarily be concluded that there was an intention to injure.

"There is nothing in the policy which limits coverage to negligent acts. It covers intentional acts as well, so long as such acts were not done *for the purpose* of injuring another." (Emphasis in original; citations omitted.)

In *Cunningham & Walsh, Inc. v. Atlantic Mutual Ins.*, 88 Or App 251, 255, 744 P2d 1317 (1987), *rev den* 305 Or 102 (1988), we considered that language:

"The court [in *Nielsen*] made no distinction between types of harm alleged and types not alleged. It stated only that, under the complaint before it, there was no allegation from which it *had* to be concluded that the insured intended any harm. If, as the court reasoned, the only allegation is that the insured acted intentionally (*i.e.* volitionally), that is not sufficient to bring the alleged conduct beyond the coverage of the policy * * *; it must also be alleged *or necessarily inferred that some harm was intended by the intentional act. If it is * * * necessarily inferred that some harm was intended, the insured's conduct would not be an accident or an 'occurrence' covered by the policy*." (First emphasis in original; second emphasis supplied.)

*See also Mutual of Enumclaw v. Merrill*, 102 Or App 408, 411, 794 P2d 818, *rev den* 310 Or 475 (1990).

We have, in certain circumstances, inferred that the cause of action alleged necessarily includes the intentional infliction of harm. In *Cunningham & Walsh Inc. v. Atlantic Mutual Ins., supra*, 88 Or App at 255, we interpreted a policy that included the identical definition of "occurrence" at issue here and held that

"deceit, by its nature, is an act from which an intention to cause harm must necessarily be inferred, and that, when deceit is intended, it is of no consequence that the specific harm for which relief is sought is not alleged to have been intended. We hold that, when fraud or deceit is committed, its natural and intended consequence is to do harm and, whatever the harm might be, the conduct which brought it

about is not an 'occurrence' under the policy." (Citations omitted.)

In *Falkenstein's Meat Co. v. Maryland Casualty Co.*, *supra*, we held that an insurer was not obligated to defend its insured, an employer who had allegedly engaged in retaliatory and discriminatory conduct in violation of ORS 654.062(5)(a), because injurious intent was necessarily inferred from the employer's alleged misconduct. We wrote:

> "The complaint does not allege a specific type of intentional harm. However, retaliatory and discriminatory conduct pursuant to ORS 654.062(5)(a) are acts from which an intention to cause harm must necessarily be inferred. When an employer retaliates against an employe in violation of ORS 654.062(5)(a), the natural and intended consequence is to cause some type of harm to the employe. It cannot be said either that the conduct was accidental or that the resulting harm was unexpected or unforeseen by the employer.

> "Accordingly, we hold that the alleged conduct * * * is not an 'occurrence' under the policy and that, therefore, [the insurer] had no duty to defend [the insured]." 91 Or App at 280. (Citations omitted.)

■ We believe that instituting a criminal proceeding against another for a purpose other than that of achieving justice is, by its nature, an act from which the intent to do harm must necessarily be inferred. When a person purposefully instigates an unfounded criminal proceeding, the natural and ordinary consequence of that act is to cause the accused to incur the expense of defending against the charge, as well as to endure the mental anguish, inconvenience, embarrassment and humiliation that are likely to accompany the prosecution. Additionally, it is practically certain that the prosecution will inflict injury on the credit, standing and reputation of the accused. *See* Prosser and Keeton, *Torts* 871, 887, § 119 (5th ed 1984); 52 Am Jur 2d, "Malicious Prosecution," § 100.

It cannot be said that the resulting harm is unexpected or unforeseen by the person who commences the action. Thus, the fact that Kuhl may not have subjectively intended the specific injuries that Ledford sustained — or any injuries — is immaterial, "because an injurious intent is necessarily inferred from this type of intentional misconduct."

*Mutual of Enumclaw v. Merrill, supra,* 102 Or App at 412. Accordingly, we hold that the intentional conduct involved here is not an "occurrence" covered by the policy. As a result, Northwest had no duty to defend Kuhl.

■ We next address whether Northwest had a duty to pay the settlement. The duty to pay is independent of the duty to defend and, even when the allegations of the complaint do not reveal an insured claim, the duty may arise if the evidence at trial demonstrates that the judgment was entered on a covered injury. *Heider v. Commercial Ins. Co.,* 248 Or 564, 566, 436 P2d 268 (1968); *Delta Sand & Gravel Co. v. General Ins. Co.,* 111 Or App 347, 352, 826 P2d 82, *rev den* 314 Or 175 (1992); *Mutual of Enumclaw Ins. Co. v. Gass, supra,* 100 Or App at 428. Here, the case was settled before trial. However, because we have determined that Ledford's complaint alleged conduct from which the intent to do harm must necessarily be inferred, any injury sustained by Ledford arose out of conduct that was outside the policy's coverage. Because the settlement could not have been based on a covered injury, we hold that Northwest had no duty to pay Kuhl for the settlement. *See Delta Sand & Gravel Co. v. General Ins. Co., supra,* 111 Or App at 352.[1]

Affirmed.

---

[1] In light of our holding, we do not reach the issue of whether the complaint alleged conduct that was subject to a specific policy exclusion.