Argued and submitted August 31, affirmed on appeal and cross-appeal
November 23, 1994

AMERICAN CASUALTY COMPANY,
a corporation,
*Respondent - Cross-Appellant,*

*v.*

Aaron T. CORUM;
A.D.; Tuality Community Hospital, Inc.,
an Oregon non-profit corporation,
*Defendants,*

M. J. N.,
*Appellant,*

*and*

TRUCK INSURANCE EXCHANGE,
a California corporation,
*Cross-Respondent.*

(9110-06813; CA A78835)

885 P2d 726

Robert P. Stafford argued the cause for appellant. With him on the briefs were Richard A. Kasson, John H. Leavitt and Kasson & Associates.

Kim Jeffries argued the cause for respondent - cross-appellant. With her on the briefs were David C. Landis and Wood Tatum Wonacott & Landis.

Thomas W. Brown argued the cause for cross-respondent. With him on the briefs was Cosgrave, Vergeer & Kester.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Plaintiff American Casualty Company (CNA)[1] filed this declaratory judgment action to establish that it had no duty to defend or indemnify defendant Corum in two lawsuits. It also sought to establish that Truck Insurance Exchange (Farmers)[2] was Corum's primary insurer and had a duty to defend and indemnify Corum in the two lawsuits and to reimburse CNA for costs it incurred in defending Corum. In a counterclaim, "MJN," a plaintiff in one of the lawsuits, alleged that CNA had a duty to indemnify Corum, sought payment of a judgment that she had obtained against him and requested an award of attorney fees.[3] The court entered a declaratory judgment that neither CNA nor Farmers had a duty to indemnify Corum in the two lawsuits that had been brought against him and that Farmers had no duty to defend him. MJN appeals and CNA cross-appeals. We affirm.

Corum worked at Tuality Community Hospital (Tuality) as a nurse. MJN and "AD" brought separate civil lawsuits against Corum arising out of sexual contact he had with them while they were patients.[4] Farmers refused to defend Corum, and CNA defended him under a reservation of rights. MJN obtained a judgment for professional negligence against Corum, and he assigned his rights under the CNA policy to her.

On appeal, MJN assigns error to the grant of partial summary judgment to CNA and to the denial of her motion for summary judgment.[5] Our review of a summary judgment is to determine whether the moving party has met its burden to show that there are no material issues of fact and that it is

---

[1] American Casualty Corporation is a Pennsylvania corporation that is authorized to transact insurance business in Oregon. We refer to it as CNA, as do the parties, because it is a member of the CNA Insurance Companies.

[2] Truck Insurance Exchange is a California corporation that is authorized to transact insurance business in Oregon. We refer to it as Farmers, as do the parties, because it is a member of the Farmers Insurance Group.

[3] In a cross-claim, MJN also sought indemnification from Farmers. MJN has not assigned error to the court's dismissal of her cross-claim against Farmers.

[4] MJN's lawsuit also involved "follow-up" contacts by Corum that occurred at MJN's home.

[5] AD is not involved in this appeal.

entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1978); *St. Paul Fire v. McCormick & Baxter Creosoting*, 126 Or App 689, 870 P2d 260 (1993), *mod* 128 Or App 234, 875 P2d 537 (1994). We view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993).

██ MJN first argues that CNA has a duty to indemnify Corum, because the insurance policy it issued to Corum covers professional negligence, and the judgment she obtained establishes that Corum's conduct constituted professional negligence. She asserts that that judgment precludes CNA from arguing that Corum's conduct is excluded from coverage, because it was intentional. That is not correct. Issue preclusion does not apply when a conflict of interest prevented an insurer from litigating an issue in a prior adjudication. *State Farm Fire and Casualty Co. v. Paget*, 123 Or App 558, 562-64, 860 P2d 864, *rev den* 319 Or 36 (1994).

██ Next, MJN argues that CNA had a duty to indemnify Corum, because the exclusions in its policy do not apply.[6] She asserts that the exclusion for intended injury is inapplicable, because "the legal basis for Corum's liability to MJN was negligence." She further asserts that the judgment against Corum does not establish that he intended to harm or injure her. *See Nielsen v. St. Paul Companies*, 283 Or 277, 281, 583 P2d 545 (1978).

In her eighth amended complaint, MJN alleged:

"4.

"Defendant Corum, who had just passed the registered nurse licensing exam in July, 1988 and was recently

---

[6] The relevant policy provisions provide:

"We will not defend or pay, under this policy for:

"A. **Injury** or **damage:**

"* * * * *

"2. which was expected or intended from [the insured's] standpoint;

"* * * * *

"7. resulting from a **medical incident** which is also a willful violation of a statute, ordinance or regulation imposing criminal penalties * * *." (Emphasis in original.)

employed at Tuality, was assigned to plaintiff's room on or about November 2, 1988 and first treated plaintiff on that date. He fulfilled the duty of the hospital and the needs of the patient by taking her vital signs. He shut the drapes to cover the viewing windows for an extended period of time, inserted his fingers inside plaintiff's vagina, and probed her genital area.

"5.

"Corum assured plaintiff he was committing these acts to further a legitimate medical purpose as required of nurses at Tuality.

"6.

"On or about November 3, 1988 defendant Corum again entered plaintiff's room and closed the drapes. He told her he was not assigned to the room but was concerned and wanted to see how she was doing. He also told plaintiff he was a therapist and was more thorough than the other nurses. After gaining plaintiff's trust and confidence, he again focused the latter part of his examination on the vaginal area by penetrating with his fingers.

"* * * * *

"13.

"In committing the acts and omissions which injured plaintiff, defendant Corum fell below the standard of care required of nurses * * *."

The case was tried on that complaint and the jury returned a verdict in favor of MJN. The complaint alleges that Corum failed to conform his conduct to the appropriate standard of care, and the jury's verdict indicates that it agreed with that allegation. However, the complaint, verdict and judgment also establish that Corum subjected MJN to improper sexual contact.

■ Generally, an insured must intend both the act and the injury for an intentional injury exclusion in an insurance policy to apply. *Allstate Ins. Co. v. Stone*, 319 Or 275, 278, 876 P2d 313 (1994); *see also Western National Assurance Co. v. Hecker*, 43 Wash App 816, 719 P2d 954 (1986); cases collected in 31 ALR4th 957 (1984 and 1994 Supp). However, a majority of jurisdictions, including Oregon, have adopted the inferred intent rule in cases of child sexual abuse. *See Mutual of Enumclaw v. Merrill*, 102 Or App 408, 794 P2d 818, *rev den*

310 Or 475 (1990); *see also Wiley v. State Farm Fire & Cas. Co.*, 995 F2d 457, 461 (3rd Cir 1993). According to that rule, an insured's intent to cause harm is inferred as a matter of law when an insured intentionally sexually abuses a child. *See Mutual of Enumclaw v. Merrill, supra*, 102 Or App at 412. Several courts have extended the application of that rule to adult victims of sexual assault. *See Rivera v. Nevada Medical Liability Ins. Co.*, 107 Nev 450, 814 P2d 71 (1991) (intent to cause injury inferred where physician sexually assaulted patient); *see also Altena v. United Fire and Cas. Co.*, 422 NW2d 485 (Iowa 1985) (intent to cause injury inferred as a matter of law where insured intended to commit acts that constituted sexual abuse).[7]

Here, the complaint, verdict and judgment establish that Corum engaged in improper sexual contact with MJN. That is a sufficient basis on which to infer an intent to injure as a matter of law. *See Mutual of Enumclaw v. Merrill, supra; Rivera v. Nevada Medical Liability Ins., supra; Altena v. United Fire and Cas. Co., supra.* Accordingly, the policy exclusion for injury or damage that was expected or intended applies, and CNA had no duty to indemnify Corum.

Because we conclude that the exclusion for intended injury applies, we need not address MJN's argument that the exclusion for a willful violation of a criminal statute does not apply.[8] The trial court did not err in partially granting CNA's motion for summary judgment and denying MJN's motion for summary judgment.

■ On cross-appeal, CNA assigns error to the partial denial of its motion for summary judgment. It argues that Farmers had a duty to defend Corum in the lawsuits brought by MJN and AD. CNA asserts that Farmers had a duty to

---

[7] We note that *Allstate Ins. Co. v. Stone, supra*, does not address the issue of intent to cause injury. The court did not address that issue, because the parties had stipulated that the insured did not intend to cause injury. 319 Or at 279-80. However, the court said, " '[t]here are some intentional acts the nature of which is such that it must necessarily be concluded that there was an intention to injure.' " 319 Or at 278 (quoting *Nielsen v. St. Paul Companies, supra*, 283 Or at 281).

[8] Because the civil judgment establishes that Corum engaged in improper sexual contacts with MJN, we need not address the parties' arguments concerning the admissibility of Corum's no contest plea and conviction on one count of sexual abuse in the second degree, ORS 163.415 (*since amended by* Or Laws 1991, ch 830, § 1), arising out of his contacts with MJN.

defend, because MJN's and AD's complaints alleged negligent conduct that is covered by Farmers' policy.

■　If a complaint, without amendment, may impose liability, the insurer is put on notice of the possibility of liability and has a duty to defend. *Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 507, 460 P2d 342 (1969). We compare the language of the Farmers' policy with the allegations contained in the complaints in the underlying lawsuits to determine whether Farmers had a duty to defend. Farmers asserts that only MJN's third and fourth amended complaints are relevant in determining whether it has a duty to defend, because the subsequent amended complaints were not tendered to it. CNA has not objected to that assertion. We look to those complaints in determining whether Farmers had a duty to defend Corum against MJN's lawsuit.

Farmers issued a liability insurance policy to Tuality. It agreed to pay any damages from injuries caused by an insured from the rendering or failure to render certain hospital or professional services. The definition of insured in that policy includes employees of the hospital when they are acting within the capacity and scope of their duties. Injury is defined as "bodily injury and injury, sickness, disease or death resulting from rendering or failing to render professional services * * *."[9]

---

[9] The policy defines hospital and professional services as:

"(1) medical, surgical, dental, nursing or other health care services to such person, including the furnishing of food or beverages in connection therewith.

"(2) furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances if the injury occurs after the named insured has relinquished physical possession thereof to others.

"(3) handling of or performing autopsies on deceased human bodies, or

"(4) activities of any person as a member of a board or a committee of the medical or professional staff of the insured, as a person communicating information to the insured or its medical or professional staff for the purpose of aiding in the evaluation of the qualifications, fitness or character of an applicant for membership or privileges on such medical or professional staff or for purposes of initiating corrective action; or as a person charged with the duty of acting as hearing officer or agent of a judicial review committee executing directives of any such board or committee."

In her third amended complaint, MJN alleged:

"4.

"Defendant Corum, who had just passed the registered nurse licensing exam in July, 1988 and was recently employed at Tuality, was assigned to plaintiff's room on or about November 1, 1988 and first treated plaintiff on that date. As his job required, he fulfilled the duty of the hospital and the needs of the patient by taking her vital signs. However, unlike other nurses of comparable professional skill and training in the community, while in the scope of employment, he shut the drapes to cover the viewing windows for an extended period of time, inserted his fingers inside plaintiff's vagina, and probed her genital area."

Paragraph 10 of the complaint alleges that Corum "attempted to rape plaintiff," when he visited her at home for follow-up treatment. Paragraph 11 of the complaint alleges:

"Following the rape attempt * * * plaintiff realized Corum had violated her trust and taken advantage of her incognitive, drug-induced state by using his position as a nurse at Tuality as a pretense to sexually molest her."

MJN's fourth amended complaint contains nearly identical allegations of sexual misconduct. AD's complaint contains allegations that Corum had sexually abused female patients at Tuality, that Tuality knew or should have known about such sexual abuse, and that Corum "sexually molested" AD. Those allegations are repeated in each of AD's six claims. The gravamen of both MJN's and AD's complaints is that Corum sexually abused them. Sexual abuse by a nurse is not "the rendering of or failure to render" professional services. *See N.M. Physicians Mut. Liability v. LaMure*, 116 NM 92, 860 P2d 734 (1993); *Niedzielski v. St. Paul Fire & Marine Ins. Co.*, 134 NH 141, 589 A2d 130 (1991). Because the complaints allege conduct that would not be covered by Farmers' policy, it had no duty to defend Corum against either lawsuit. The trial court did not err in partially denying CNA's motion for summary judgment.

Affirmed on appeal and on cross-appeal.