Submitted on remand from the Oregon Supreme Court June 29, 1995, reversed and remanded on appeal; reversed and remanded with instructions on cross-appeal February 7, American Casualty Co.'s reconsideration allowed by opinion May 15, 1996
See 141 Or App 92, 917 P2d 39 (1996)

AMERICAN CASUALTY COMPANY,
a corporation,
*Respondent - Cross-Appellant,*

*v.*

Aaron T. CORUM;
A.D.; Tuality Community Hospital, Inc.,
an Oregon non-profit corporation,
*Defendants,*

M.J.N.,
*Appellant,*

*and*

TRUCK INSURANCE EXCHANGE,
a California corporation,
*Cross-Respondent.*

(9110-06813; CA A78835)

910 P2d 1151

Robert P. Stafford argued the cause for appellant. With him on the briefs were Richard A. Kasson, John H. Leavitt

and Kasson & Associates. On remand, Robert D. Bulkley, Jr., and Markowitz, Herbold, Glade & Mehlhaf, P.C., and Richard P. Kasson, Robert P. Stafford, and Kasson & Associates filed a memorandum.

Kim Jefferies argued the cause for respondent - cross-appellant. With her on the briefs were David C. Landis and Wood Tatum Wonacott & Landis. On remand, Kim Jefferies and Wood Tatum Sanders & Murphy, and David C. Landis and Landis & Bailey filed a memorandum.

Thomas W. Brown argued the cause for cross-respondent. With him on the briefs and memorandum on remand was Cosgrave, Vergeer & Kester.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

## De MUNIZ, J.

The Supreme Court has vacated our opinion, *American Casualty Co. v. Corum*, 131 Or App 445, 885 P2d 726 (1994), and remanded for reconsideration in the light of *Ledford v. Gutoski*, 319 Or 397, 877 P2d 80 (1994). *American Casualty Co. v. Corum*, 321 Or 135, 894 P2d 461 (1995). We take the procedural posture and facts from our opinion:

"Plaintiff American Casualty Company (CNA) filed this declaratory judgment action to establish that it had no duty to defend or indemnify defendant Corum in two lawsuits. It also sought to establish that Truck Insurance Exchange (Farmers) was Corum's primary insurer and had a duty to defend and indemnify Corum in the two lawsuits and to reimburse CNA for costs it incurred in defending Corum. In a counterclaim, 'MJN,' a plaintiff in one of the lawsuits, alleged that CNA had a duty to indemnify Corum, sought payment of a judgment that she had obtained against him and requested an award of attorney fees. [On summary judgment, the trial] court entered a declaratory judgment that neither CNA nor Farmers had a duty to indemnify Corum in the two lawsuits that had been brought against him and that Farmers had no duty to defend him. MJN appeals and CNA cross-appeals. We affirm.

"Corum worked at Tuality Community Hospital (Tuality) as a nurse. MJN and AD brought separate civil lawsuits against Corum arising out of sexual contact he had with them while they were patients. Farmers refused to defend Corum, and CNA defended him under a reservation of rights. MJN obtained a judgment for professional negligence against Corum, and he assigned his rights under the CNA policy to her." 131 Or App at 447 (footnotes omitted).

MJN appealed the partial summary judgment[1] in favor of CNA, which ruled that CNA was not obligated to indemnify Corum, and the denial of her motion for summary judgment. CNA cross-appealed against Farmers, assigning error to the trial court's ruling that Farmers did not have a

---

[1] The changes to summary judgment in ORCP 47 C made by the 1995 legislature do not affect the issues in this appeal.

duty to defend Corum.[2] We held that CNA had no duty to indemnify Corum in the MJN action, *inter alia*, because the allegation in the complaint of improper sexual contact was a sufficient basis on which to infer an intent to injure as a matter of law.

*Ledford* was an action for indemnity filed by Kuhl against his insurer. Kuhl had been sued for malicious prosecution by Ledford, and Kuhl's insurer had rejected the tender of defense. The complaint in the malicious prosecution action alleged that Kuhl "intended to harass, annoy, harm and cause expense to" Ledford and that Kuhl acted "for the purpose of injuring" Ledford. 319 Or at 399. In our opinion, we held that the intent to injure is inferred from the nature of the tort of malicious prosecution. *Ledford v. Gutoski*, 121 Or App 226, 232, 855 P2d 196 (1993). The Supreme Court stated that we had missed the point in evaluating the duty to defend. Relying on principles set out in earlier opinions, the court stressed that the determination of the insurer's duty to defend depends only on two documents: the complaint and the insurance policy. *Ledford*, 319 Or at 399-400. If the complaint, without amendment, provides any basis on which the insurer is obligated to provide coverage, it has a duty to defend. *Id.* If a policy contains exclusions for injuries resulting from intentional acts, the insured must have intended to cause the particular injury or harm, as opposed to merely intending the act. *Id.* at 401. It is not sufficient that intentional acts, even if unlawful, result in unintended harm; the acts must have been committed for the purpose of inflicting the injury. *Id.* at 402. Because Ledford's complaint alleged that Kuhl subjectively intended to cause injury, the complaint could not permit proof that Kuhl instituted the prosecution for other than a malicious purpose. Therefore, there was no duty to defend. *Id.*

■ The duty to defend is independent of the duty to indemnify, and, even though there may be no duty to defend, there may be a duty to indemnify. *Id.* at 403. In *Ledford*, the subjective intent to harm was part of the tort of malicious prosecution; an element of the tort is that a person has acted with the intent to cause harm by subjecting another to an

---

[2] The court's rulings on the various motions for summary judgment disposed of all issues and claims pending among the parties.

unjustifiable prosecution. *Id.* at 405. Therefore, although subjective intent is a question of fact, summary judgment was appropriate. It could be determined from the record that there was no duty to indemnify because Kuhl either was not liable for malicious prosecution, or, if he were liable, he had acted with the requisite subjective intent which would preclude coverage. *Id.* at 405.

■■    With those principles before us, we turn first to CNA's cross-appeal. CNA argues that the court erred in finding that Farmers did not have a duty to defend. That duty must be determined only from the complaint and the policy. MJN's complaint[3] alleged three theories of recovery: battery, nursing malpractice, and invasion of privacy. AD's complaint alleged battery and negligence. Farmers' policy defines an insured to include an employee "only when such employee * * * is acting within the capacity and scope of his duties as such." The policy obligates the insurer to pay "on behalf of the insured" damages for personal injury "sustained by any person" or for injury to any person "arising out of the rendering of or failure to render * * * nursing or other health care service to such person[.]" "Injury" is defined to include injury "resulting from rendering or failing to render professional services, or from * * * invasion of privacy."[4]

■    Farmers' original position was that

"[t]he *MJN* suit alleged conduct by Corum which was not insured by Farmers' policy, *i.e.,* Corum lied to or otherwise took advantage of a highly vulnerable person to allow him to

---

[3] An insurer is not obligated to defend any action not tendered to it. *Oregon Insurance Guaranty Assoc. v. Thompson*, 93 Or App 5, 11, 760 P2d 890 (1988), *rev den* 307 Or 303 (1989). Although the fourth amended complaint in MJN's action was apparently tendered to Farmers, the parties cite the allegations of the third amended complaint. MJN's case was eventually tried on the eighth amended complaint, which alleged only a claim for nursing malpractice.

[4] The policy further defines an occurrence to mean

"an event or series of events * * * caused by an act or omission of the insured * * * which results during the policy period, in personal injury * * * neither expected nor intended from the standpoint of the insured [or]

"means the rendering of, or the failure to render, professional services during the policy period."

The policy obligates Farmers to "[d]efend any suit * * * alleging such injury, sickness, disease, death, destruction, malpractice, error or mistake and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent."

sexually molest and attempt to rape her. As a matter of law, Farmers had no duty to defend that kind of conduct."[5]

On remand, Farmers argues that *Ledford* "merely reaffirmed existing duty to defend law" and that,

"this case from Farmers' standpoint was not decided on the basis of intentionally caused injuries. Therefore, the inquiry in *Ledford* whether the conduct alleged there was, as a matter of law, intentional harm is not a necessary inquiry here in deciding whether Farmers had any duty to defend Corum in either the *MJN* suit or the *AD* suit."

Thus, Farmers argues, we were correct in concluding that it had no duty to defend, because sexual misconduct is conduct that could not potentially be covered.

We agreed with Farmers in our original opinion, concluding that an insurer cannot be required to insure an act of sexual abuse because the very nature of sexual abuse can permit only an inference that the perpetrator intended harm. However, under the methodology set out in *Ledford*, we erred in doing so.[6]

Under *Ledford*, an insurer can consider only the complaint and should be able to determine from the face of the complaint whether to accept or to reject the tender of the defense. 319 Or at 400. Here, the allegations included that Corum, a registered nurse, while employed by Tuality Hospital and "acting within the course and scope of his employment," "inserted his fingers into plaintiff's vagina and probed her genital area."[7] On remand, we agree with CNA that those allegations cannot be read only as constituting sexual abuse.[8] As CNA states:

"[T]he probing of a vagina by a registered nurse in a hospital setting could be considered a 'vaginal exam' and included in the definition of professional services. Obviously, * * * criminal sexual abuse is not the rendering of professional services, but one cannot tell from the complaint whether Corum's actions were a vaginal exam or criminal sexual abuse."

---

[5] Farmers contends that, for the same reason, the facts alleged by AD likewise showed that Farmers had no duty to defend.

[6] The parties' arguments regarding public policy do not require discussion.

[7] AD's complaint contained substantially the same allegations.

[8] As CNA notes, the determination that Corum's conduct was "sexual" was made in the criminal proceeding.

Our conclusion to the contrary in our original opinion was incorrect. From the face of the complaint, Farmers had a duty to defend.[9]

■　　Farmers argues, however, that Corum's conduct, and his acknowledgment of that conduct in the criminal proceeding, precluded coverage under Farmers' policy and, therefore, Farmers had no duty to defend. Farmers relies on *Casey v. Northwest Security Ins. Co.*, 260 Or 485, 490 P2d 208 (1971). In *Casey*, the insured was convicted of assault with a dangerous weapon after he ran an automobile into a person, causing injuries. The victim then brought a personal injury action, and the insurer, which knew that the insured had been convicted, *id.* at 486, refused the tender of defense. The insured later brought an action against the insurer for the attorney fees he incurred in defending against the personal injury action. The Supreme Court held that the insured's criminal conviction for assault "uncontrovertibly" established that the insured had no coverage, and, therefore, the insurer had no duty to defend. *Id.* at 492.

The continued vitality of *Casey* after *Ledford* is uncertain: If an insurer is limited to the pleadings[10] and the policy in determining whether to defend, it is not clear how an insurer can look to "extrinsic" knowledge of prior criminal adjudications to refuse a tender of defense.[11] However, we need not resolve the issue of whether *Casey* is still good law.

---

[9] Additionally, *Ledford* makes clear that an insurer has a duty to defend if the complaint provides any basis for which the insurer provides coverage. 319 Or at 400. Farmers' policy covered "invasion of privacy." Although Farmers disputes that Corum was an "insured" and that the conduct constituted an "occurrence," it acknowledges that, if not excluded under those definitions, the allegations of Corum's intentional invasion of MJN's privacy by his repeated sexual molestation could be a source for concluding that there was coverage. As with the claim for "nursing malpractice," it could not be determined from the allegations of the complaint that Corum was not an insured or that his acts did not constitute an occurrence within the policy.

[10] In *Oregon Insurance Guaranty Assoc.*, 93 Or App at 10 n 5, we held that the insurer had no duty to defend against a claim of trespass when the pleadings included a copy of a judgment holding the insured in contempt for violating an injunction prohibiting the insured from trespassing. Here, there was nothing regarding Corum's conviction in the pleadings tendered to Farmers.

[11] In *North Pacific Ins. Co. v. Wilson's Distributing Service*, 138 Or App 166, 908 P2d 827 (1995), a declaratory judgment action, we considered whether the insurer could show it had no duty to defend by establishing, in the declaratory judgment proceeding, facts that had not been uncontrovertibly established in a separate proceeding commenced before the underlying tort action is concluded. We held that it could not.

Even assuming that *Casey* states an exception to *Ledford's* general rule, defendant's convictions here did not "incontrovertibly establish" his intent to injure,[12] as we discuss below.

We turn to MJN's appeal, in which she assigns error to the trial court's grant of partial summary judgment in favor of CNA on the ground that it had no duty to indemnify Corum. The duty to indemnify is independent of the duty to defend. *Ledford*, 319 Or at 403. CNA's policy excluded coverage for injury "which was expected or intended from [the insured's] standpoint." MJN's personal injury action against Corum, brought on the Eighth Amended Complaint, alleged only a claim of negligence. She made no allegations that Corum expected or intended to injure her. The jury returned a verdict in favor of MJN.

■ ■ MJN argues that the judgment in the personal injury action conclusively determined that Corum acted negligently rather than intentionally. We have decided that contention adversely to MJN's position, and decline to revisit it. *State Farm Fire and Casualty Co. v. Paget*, 123 Or App 558, 860 P2d 864 (1993), *rev den* 319 Or 36 (1994). However, we agree with MJN that, under *Ledford*, it was error to conclude as a matter of law that Corum intended the harm so that there was no duty to indemnify. The lesson of *Ledford* is that, if intent to injure is not an element of the tort, whether the insured had the subjective intent to cause the harm is a question of fact, and such intent may be inferred only when that is the only reasonable inference from the insured's conduct. 319 Or at 404.

■ The record on summary judgment here, unlike in *Ledford*, does not support summary judgment. There were

---

[12] MJN's action here was filed in November 1990 and AD's in June 1991. The declaratory judgment action was filed in October 1991. The events giving rise to the criminal charge and the tort actions took place between October and December 1988. Corum was indicted in May 1990 and pleaded no contest to sexual abuse in the second degree, a Class A misdemeanor, in September 1990. Judgment on that conviction was entered in March 1991. In March 1992, a jury returned a verdict in favor of MJN on her complaint alleging negligence. In June 1992, the court heard oral argument on the motions for summary judgment in the declaratory judgment proceeding, and judgment was entered in February 1993.

no issues of intent resolved in the tort action.[13] Moreover, Corum's conviction does not establish that he intended the harm.[14] Corum pleaded no contest to one misdemeanor charge of sexual abuse in the second degree.[15] The count alleged that Corum

> "did unlawfully and *knowingly* subject [MJN] to sexual contact, by touching her genitalia, a sexual part of the victim for the purpose of arousing and gratifying the sexual desires of the said defendant and victim, the said victim not consenting to the sexual contact." (Emphasis supplied.)

■ Under the Oregon criminal code, the concepts of "intent" and "knowledge" are distinct. *State v. Francis*, 284 Or 621, 626, 588 P2d 611 (1978). Intent is defined as conscious purpose, ORS 161.085(7), and knowledge is defined as conscious awareness, ORS 161.085(8). *State v. Francis*, 30 Or App 359, 362, 567 P2d 558 (1977); *see also In re Gustafson*, 305 Or 655, 660, 756 P2d 21 (1988). We agree with MJN that willful action requires intent. *See, e.g., Gustafson* (judge acts willfully if intends to take action or cause a result contrary to applicable rule); *Virgil v. Walker*, 280 Or 607, 611, 572 P2d 314 (1977) (willful aggression for purposes of workers' compensation law is aggression that is deliberate and intentional). Corum's misdemeanor conviction does not show that he acted intentionally. CNA's policy also excluded coverage for willful violations "of a statute, ordinance or regulation imposing criminal penalties." However, for the reasons noted above, Corum's conviction shows a knowing violation but does not establish a willful violation. Intent remains a question of fact precluding summary judgment.

On appeal, reversed and remanded; on cross-appeal, reversed and remanded with instructions to enter partial

---

[13] Corum submitted an affidavit in this action that stated that he did not intend injury.

[14] We recognize that, in *State Farm Fire & Cas. v. Reuter*, 68 Or App 17, 680 P2d 1000 (1984), we concluded that a conviction for rape in the first degree meant that the defendant had intentionally intended injury to the victim. However, the parties did not seek review of that holding, and the Supreme Court did not address that issue in its opinion. *State Farm Fire & Cas. v. Reuter*, 299 Or 155, 700 P2d 236 (1985). In the light of *Ledford*, we conclude that we may not here equate Corum's admission of a "knowing" act with an act intended to cause harm.

[15] As a result of legislative amendments in 1991, the offense is now sexual abuse in the third degree.

summary judgment against Truck Insurance Exchange in favor of American Casualty Company.